ORIGINAL

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2006 AUG 31 PM 2:21

CLERK _____
SO. DIST. OF GA.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

TEXACO TEMPLE,

    Petitioner,

v.              405CV164

JAMES DONALD, Commissioner of
the Georgia Department of Corrections;
and CALVIN MORTON, Warden,

    Respondents.

## ORDER

28 U.S.C. § 2254 petitioner Texaco Temple Objects to the Magistrate Judge's (MJ) Report and Recommendation (R&R) that this Court should deny his § 2254 petition for failure to state a claim. Doc. # 18. He also moves the Court to expand the record to include exculpatory documentation. Doc. # 17.

A state court jury convicted Temple of three counts of aggravated assault and one count of possession of a firearm by a convicted felon. His motion for new trial was denied and he unsuccessfully appealed. *Temple v. State*, 253 Ga.App. 606 (2002). On appeal he contended that the evidence was insufficient to support the verdicts, that he did not receive effective assistance of counsel, and that the trial court should have granted his motions for mistrial when his character was placed in issue by the State. *Id.* at 608-11.

After exhausting his state remedies, Temple petitioned this Court for § 2254 relief. Doc. # 1. Among other things, he claims his trial counsel provided him with constitutionally deficient representation by, *inter alia*, failing to introduce evidence that petitioner passed a gunshot residue test. Doc. # 11 at 3. After noting that this Court cannot overturn state court determinations unless they are shown to be contrary to, or an unreasonable application of, federal constitutional law, the MJ found no grounds to grant § 2254 relief. Doc. # 11.

Among other things, the MJ correctly stated that trial counsel's actions will not be deemed constitutionally deficient if they can be explained as reasonable strategic decisions. Doc. # 11 at 10. The R&R correctly concludes that Temple's attorneys actions were just such decisions. One claim does give the Court pause, however. To fully grasp it requires a review of the relevant facts. Temple's

> three victims were traveling in a car at approximately 10:30 p.m.[ when] the driver looked into his rear-view mirror and saw a vehicle swerving into another lane. As he slowed to approach a stop sign, his car was rear-ended. The impact caused the car to spin and come to a rest partially in a ditch. The driver testified that following the impact, he heard "some shots fired" and found himself "looking down the barrel of a pistol. And the guy that was pointing the pistol said he was going to kill everybody in the car." The driver unequivocally identified Temple, with whom he had been acquainted before the incident, as the man who pointed the gun and threatened the three victims. He testified that Temple shot at two tires, "but the tires didn't go down." Another man with Temple attempted to knock the gun away from the victims, and the gun fired again.
>
> Meanwhile, the victim in the backseat on

the passenger side, who testified that the gun was pointed inside the driver's window and that the man holding the gun stated that he was "going to kill all of y'all," decided to exit the car. He "wasn't going to just sit in that car and get shot just like that." He jumped out of the car and saw that "the gun was on me." According to this victim, as the man with the gun was coming around the car toward him, the front seat passenger, a female, exited the car and said, " 'You mad with me.' " The same male victim was relieved at that time to see the blue lights of a police car approaching. He testified that the other man accompanying the individual with the gun stayed on the scene for a short time during the ensuing investigation and helped pull the car from the ditch. The driver testified that when the police car arrived, Temple "threw the gun in the bushes" and ran into the woods.

253 Ga.App at 606-07.

There was other evidence, including the testimony of a sheriff's deputy who arrived at the scene, and to whom Temple made an incriminating statement.[1] Id. Still,

[n]o weapon was found on Temple's person, and during a subsequent custodial interview, he denied knowing anything about a shooting. He said that the man with him, whom he could not identify, "probably did the shooting." A pistol, two spent rounds, and at least one live round were recovered approximately twenty to thirty feet from the victims' car. [The deputy] acknowledged on cross-examination that James, the man accompanying Temple, could have been the person driving the car but did not find it likely that James was the person who shot the gun. He testified that the victims did not "act as though [James] had just shot at them. They were standing around very calm. I would have thought they'd had a better reaction if he was the one that had shot at them."

Id. at 607.

The Georgia appellate court on direct appeal found the evidence sufficient to support the three aggravated assault verdicts. In addition to Temple's incriminating statement to the deputy, the driver unequivocally identified him as the man who pointed a gun at the victims and threatened to shoot all of them. Id. True, the female victim did not testify, and testimony was presented that she exited the car and spoke to Temple, but the testimony of the other two victims concerning his actions and their own fears was enough to support the verdict of guilt on the aggravated assault charges. Id. at 608. The state habeas court refused to disturb this result and the R&R advises this Court to do the

---

[1] The deputy (John Glandon)

> learned from the victims that they had been rear-ended and that the person who "had ran [sic] into the woods had pulled a gun and shot at them." He searched the other car and found a rental agreement bearing Temple's name. A short time later, while Glandon was inside his patrol car, he saw "Temple standing just behind the driver's door." Glandon exited the car and "laid hands" on Temple because he "was afraid he still had the weapon." As soon as Glandon did so, Temple stated "that he knew he had [done] wrong, but

> he had sold him bad drugs." Temple did not indicate to Glandon the name of the person to whom he was referring.

Id. at 607.

same. Doc. # 11.

This Court agrees with the R&R that this is not an unreasonable application of federal constitutional law. "The relevant question in reviewing the sufficiency of the evidence supporting a criminal conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Hallford v. Culliver*, ___ F.3d ___, 2006 WL 2313104 at * 9 (11th Cir. 8/11/06) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The *Jackson* standard guides the state courts as to the federal constitutional minimum. This Court's review is even more limited. *See Eckman v. Williams*, 151 Fed.Appx. 746, 748 (11th Cir. 2005) (in habeas corpus proceeding in which petitioner raised issue of sufficiency of evidence supporting her state court convictions, district court should not have reviewed sufficiency of evidence claim on the merits as issue had already been raised by petitioner on direct appeal to state supreme court and decided adversely to her; rather, district court should have framed issue as whether it erred by holding state supreme court's decision was not an unreasonable application of, or contrary to, established federal law).

Thus, even if the Court would have decided the issue differently, it cannot grant relief unless it is convinced that the state courts' decisions were unreasonable. They were not.

At Temple's trial the prosecution also introduced a certified copy of Temple's felony conviction for possession of cocaine without objection, and this supported the charge of possessing a firearm by a convicted felon. *Id.* The state courts' refusal to disturb this result likewise involves no unreasonable application of federal constitutional law.

Finally, the *Temple* court rejected Temple's ineffective assistance claims, including the claim based on his attorney's failure to introduce the gunshot residue test:

> We find no merit in Temple's argument concerning trial counsel's failure to introduce evidence that he passed a gunshot residue test. He has pointed to no evidence of record showing this fact to be true, but instead merely states in his appellate brief that "there was evidence that a gunshot residue analysis was performed on Appellant's hands shortly after the alleged shooting" and that this test did not show the presence of gunshot residue.

*Id.* at 610.

Moving to supplement the record *now*, after a direct appeal, two state habeas proceedings, *and* an entire R&R cycle, Temple submits what appear to be copies of the testing reports showing no gun residue found upon him. Doc. # 17. He also includes various trial transcript excerpts, along with copies of state-court filings, then seeks an evidentiary hearing. *Id.*

What Temple does not include, however, is an explanation why it took until this late in the review process to proffer this information. Piecemeal litigation is especially prohibited in the collateral review process, as it violates the public interest in preventing endless appeals. That is why courts routinely uphold procedural default, statute of limitations, and successiveness defenses, among others. That is also why the

3

Court denies this particular motion.[2]

The Court has reviewed *Temple*, the post-conviction proceedings of record and the R&R. It finds no error sufficient to warrant § 2254 relief. Accordingly, the Court **DENIES** petitioner Texaco Temple's supplementation motion (doc. # 17), **OVERRULES** his Objection (doc. # 18), **ADOPTS** the R&R (doc.# 11) and **DISMISSES** his § 2254 petition. Doc. # 1.

This 31 day of August, 2006.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[2] This is more or less a formality at this juncture. Temple is now free to appeal this ruling to the Eleventh Circuit. There he can cite to his supplementation motion (doc. # 17), which is already in the record of this case and contains the documentation in question. Nothing prevents the Eleventh Circuit from examining it in determining whether this Court erred in denying Temple's supplementation motion. If this Court erred on that score, then the circuit will be able to examine the documentation on the merits. Either way, Temple has achieved more or less what he sought: getting the documentation into the record of this case. In the meantime, the Court denies his motion for an evidentiary hearing regarding the just-proffered documentation on untimeliness grounds.